**EXHIBIT 1**



# IN THE DISTRICT COURT OF CLEVELAND COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| JENIFER GARZA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>WHATABURGER FRANCHISE, LLC, )<br>a foreign limited liability company, )<br>)<br>and )<br>)<br>WHATABURGER RESTAURANTS, )<br>LLC, a foreign limited liability company, )<br>)<br>Defendants. ) | Case No.: CJ-14-65 W<br><br>ATTORNEY LIEN CLAIMED<br><br>STATE OF OKLAHOMA ) S.S.<br>CLEVELAND COUNTY )<br>FILED In The<br>Office of the Court Clerk<br><br>JAN 21 2014<br><br>DOCKET_____PAGE_____RECORDED<br>Rhonda Hall, Court Clerk<br>_____DEPUTY |

### PETITION

COMES NOW Plaintiff, Jenifer Garza, by and through her attorney of record David A. Warta of *Smolen, Smolen & Roytman, P.L.L.C.*, and brings this action against Defendants, Whataburger Franchise, LLC, and Whataburger Restaurants, LLC (collectively "WB").

#### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a resident of Cleveland County, Oklahoma.

2. Defendant Whataburger Franchise, LLC is a foreign limited liability company that conducts substantial business in Cleveland County and has substantial ties to Cleveland County. Defendant regularly employs more than fifty (50) people within a seventy-five (75) mile radius.

3. Defendant Whataburger Restaurants, LLC is a foreign limited liability company that conducts substantial business in Cleveland County and has substantial ties to Cleveland

1

County. Defendant regularly employs more than fifty (50) people within a seventy-five (75) mile radius.

4. This is an action for damages and to secure protection of and to redress deprivation of rights secured by Title VII of the Civil Rights act of 1964, as amended 42 U.S.C §2000-2 hereinafter ("Title VII"), providing for relief against discrimination in employment on the basis of gender, retaliation, and failure to ensure a non-hostile work environment.

5. This is an action for damages and to secure protection of and to redress deprivation of rights secured by the Family Medical Leave Act of 1993 (29 U.S.C. § 2601, *et seq.*) (herein "FMLA").

6. Plaintiff filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") complaining to the EEOC of discrimination based on her sex. The charge was filed within three hundred (300) days of the discriminatory acts alleged. Plaintiff received her Notice of Right to Sue on or about October 28, 2013, and this Petition has been filed within ninety days (90) of the receipt of the Notice of Right to Sue. As such, all conditions precedent to the filing of this lawsuit have been fulfilled.

7. The wrongful acts of Defendants which give rise to this dispute occurred in Cleveland County, Oklahoma.

8. This Court has jurisdiction and venue is proper in Cleveland County, Oklahoma.

9. Compensatory damages are sought pursuant to 29 U.S.C. § 2617.

10. Costs and attorney's fees may be awarded pursuant to 29 U.S.C. § 2617(a)(3).

## FACTS

11. On December 10, 2011, Plaintiff Jennifer Garza commenced employment with Defendants (collectively "WB") as a Team Member. During her career at WB, on many occasions, Whataburger manager, Zack Qualls ("Qualls"), repeatedly made inappropriate, unwanted, sexually-themed remarks to Garza, including the following:

a. Commenting on the size of his penis and its appearance;

b. Qualls would take mayonnaise or other food items like cheese and purposefully smear some on himself and simultaneously make comments about sex, masturbating, and ejaculation;

c. Qualls often asked Garza and other female employees, "do you want cheese with your cheeseburger?" while grabbing his penis;

d. On numerous occasions, Qualls asked Garza, "do you want to f***?" or stated "let's go f***." Qualls asked Garza out on dates or to come to his apartment "just to f***," and Garza repeatedly said she wasn't interested. Qualls constantly talked about sex and the fact that he likes sex, and that he wanted to have sex with Garza. Moreover, Qualls often grabbed his penis in front of Garza (and other female employees) and asked "how bad do you want it?" Qualls also commented to Garza, "let's go f***, now there's some stress relief for you." These comments were made repeatedly throughout Garza's employment with Whataburger.

12. Qualls also made inappropriate, unwanted physical contact with Garza on numerous occasions, including the following:

a. On many occasions, Qualls purposefully brushed his crotch against either Garza's front, or buttocks;

  b. Qualls licked Garza's ear, and tried to stick his tongue in her inner ear;

  c. Qualls slapped Garza's buttocks on numerous occasions. On one such occasion, while Garza was at the front counter catering food, Qualls slapped her buttocks so hard in front of customers and other employees that Garza began to cry. These actions were often coupled with Qualls making sexual groaning noises.

13. Garza told Qualls many times that she was uncomfortable with his sexual advances towards her, and made it very clear that she wanted it to stop. Additionally, Garza made repeated complaints to other WB management about Qualls' outrageous behavior. Around late February 2012, Garza complained to Assistant Manager Michelle May ("May") about Qualls' sexual advances. Garza also complained repeatedly to Team Leader/Manager Kenya White and General Manager Maurice Little about Qualls' sexual advances and comments. Garza suggested that May switch Garza to a different shift, given Qualls' sexual advances. Garza made the same request to Little, after May refused to move Garza to a different shift to be away from Qualls, but Little replied that he had nowhere to put Garza.

14. On one occasion in April 2012, after an occasion when Qualls had slapped Garza's buttocks, Garza complained to White about Qualls' sexual advances. Garza also complained to White in mid-May 2012 about one of the ear licking incidents. Furthermore, Garza also complained to WB's security guard. White was fully aware of Qualls' sexually inappropriate behavior, for she was present during many of the incidents. White even told Garza "he always gets away with his sexual comments to everyone."

15. Garza complained to Little yet again in late April 2012 about the sexual advances, and again requested to be placed on a different shift than Qualls. Garza complained to Little

4

another time, in mid-May 2012, after Qualls had licked her ear without her consent. Garza begged Little again to transfer her to a different shift than Qualls.

16. Little, rather than speaking directly with Qualls, set up a meeting with Qualls and Garza at the Lindsey Street Pizza Hut, but Qualls failed to attend. After the failed meeting, Little told Garza he would find out what happened, but never did anything to force Qualls to attend a subsequent meeting.

17. On numerous occasions, Garza asked Little for copies of the video tapes, which would undoubtedly evidence the inappropriate conduct, and Little promised to "look into that", and claimed "I'll get it to you as soon as I can" and "I'll see what I can do," but failed or refused to give the tapes to Garza. Little told Garza that the video footage only went back one to two weeks, but Assistant Manager Michelle May, another manager to whom Garza had reported Qualls' sexual advances, told Garza that Little should have no problem getting Garza that footage, because May added that "we're able to get it, and they can get footage from months prior, so it should still be there."

18. Little told Garza that he would talk to WB District Manager Roy Wood ("Wood") about the sexual advances, and take care of it. Garza kept asking Little to switch her shift, so that she didn't have to deal with Qualls' sexual advances. Little repeatedly said that there was nowhere else to put her. After a few weeks went by, nothing was done about the sexual advances, which continued. Garza reminded Little that Qualls was still engaging in sexual advances, and asked Little what was going to be done about it. Little kept saying, "I'm talking to Roy, and trying to figure out what to do."

19. Garza, frustrated that the problem continued, then told White that she was going to complain directly to Wood about Qualls' sexual advances. Garza complained to Wood on or

5

around June 1, 2012 about the sexual advances, and about Little's retaliatory act of cutting Garza's hours. Wood claimed that he knew nothing about the sexual advances, and said he would "look into this." Garza asked Wood for a shift change, but her request wasn't granted. Neither Little nor Wood did anything to help Garza prevent/correct the situation, for Qualls' sexual advances continued until Garza was terminated.

20. When Qualls became aware that Garza had reported his sexual advances, he retaliated against her, by refusing to let Garza go on breaks, ignoring her attempts to communicate regarding work-related issues, and yelling at her on the occasions that he did communicate. At a time when Garza was scheduled to leave, Qualls made her stay late for an hour after her shift ended. On a few occasions in May/June 2012, Garza told Qualls that she may need to be five minutes late (other employees were allowed to come in 15 minutes late without repercussion), and rather than treat her as he did with all other employees, Qualls simply said, "don't even bother showing up." Furthermore, Garza's hours slowly became reduced more and more, as Little cut her hours from 40 to 30 to 15 per week. Moreover, Garza's complaints to management didn't stop Qualls' sexually inappropriate behavior. Garza's hours were cut to such a degree that she felt she had no choice but to file for unemployment compensation.

21. Around June 22, 2012, Garza received a call from Defendants' Human Resources representative (Garza had missed some work approximately two weeks before this date due to walking pneumonia). Even though Garza had provided doctor's notes, Defendants told Garza her hours were being cut because of the illness-related absences. When Garza stated her belief that her hours were being cut because of the sexual harassment complaints that she

had brought to Little's attention, Defendants' representative interrupted Garza, stating, "I don't have time to listen to your drama," and then hung up on Garza.

22. On June 29, 2012, Defendants terminated Garza, even though Defendants' management knew that Garza had provided doctor's notes to account for the illness-related absences.

23. On September 20, 2012, Plaintiff Garza caused to be filed with the EEOC her Charge of Discrimination, based upon the hostile work environment created and maintained by Defendants, sexual harassment discrimination based upon her gender, as well as retaliation for having engaged in protected activity. All of the discriminatory acts alleged herein occurred within 300 days of the filing of Garza's Charge of Discrimination.

24. The EEOC issued its Notice of Right to Sue, which was received by Plaintiff on October 28, 2013. Therefore, Plaintiff's Petition is timely filed.

### First Claim For Relief
### Disparate Treatment on the Basis of Gender in Violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. §§ 2000(e), et. seq.

25. The preceding paragraphs are incorporated herein by reference.

26. The forgoing conduct violates Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000(e), et. seq.

27. Plaintiff experienced disparate treatment compared to her male coworkers with regard to protection, discipline, benefits, and other aspects of her employment in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000(e), et. seq.

28. Qualls was Plaintiff's supervisor and controlled the terms and conditions of her employment.

29. Plaintiff was subjected to numerous occasions of sexual harassment and inappropriate, unwanted sexual contact and comments by Qualls.

30. Plaintiff opposed the sexual harassment and inappropriate, unwanted sexual contact and comments. As a result, Defendants reduced Plaintiff's work hours.

31. Defendants' discriminatory practices have resulted in the loss of past and future wages and other job benefits, and have caused the Plaintiff to suffer humiliation, embarrassment, and emotional distress.

32. Defendants committed the acts alleged with malice or reckless indifference to the protected rights of Plaintiff. Plaintiff is thus entitled to recover punitive damages in an amount to be determined according to proof.

33. Upon information and belief, Plaintiff's termination was motivated in substantial part by her gender, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e), et. seq.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

    a. Back pay and lost benefits; front pay until normal retirement
    b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
    c. Punitive damages for the willful acts of discrimination committed by Defendants' management;
    d. Her attorney fees and the costs and expenses of this action;
    e. Injunctive Relief;
    f. Such other relief as the Court deems just and equitable.

### SECOND CLAIM FOR RELIEF
### Retaliation in Violation of Title VII

34. Plaintiff incorporates by reference the preceding paragraphs.

35. Defendants continuously harassed and ultimately terminated Plaintiff as a result of Plaintiff's attempt to use internal procedures to end the harassment she constantly endured.

36. By preventing and denying Plaintiff's continued employment, due to her participation in protected activity as defined under Title VII, Defendants have violated 42 U.S.C. §§ 2000(e)(3)(a).

WHEREFORE, Plaintiff prays for judgment against Defendants for:

   a. Back pay and lost benefits; front pay until normal retirement
   b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
   c. Punitive damages for the intentional, knowing and/or reckless acts of discrimination committed by Defendants' management;
   d. Her attorney fees and the costs and expenses of this action;
   e. Injunctive Relief
   f. Such other relief as the Court deems just and equitable.

### THIRD CLAIM FOR RELIEF
**Failure to Ensure a Non-Hostile Work Environment**

37. Plaintiff incorporates by reference the preceding paragraphs.

38. As her employer, Defendants owed Plaintiff a duty to ensure a non-hostile work environment.

39. Defendants were aware that Plaintiff was being subjected to repeated harassment based upon her sex, and that the harassment was severe in nature.

40. Defendants knew or should have known and had reason to believe —as Plaintiff reported the conduct internally— that its employees would engage in further harassment of Plaintiff.

41. Despite Defendants' knowledge of the conduct, they repeatedly ignored and/or otherwise failed to address Plaintiff's pleas to address the offensive conduct.

42. By failing to protect Plaintiff as an employee, Defendants breached the duty owed to Plaintiff.

43. Defendants' breach of duty proximately caused Plaintiff to suffer severe mental anguish and emotional distress.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

    a. Back pay and lost benefits; front pay until normal retirement
    b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
    c. Punitive damages for the intentional, knowing and/or reckless acts of discrimination committed by Defendants' management;
    d. Such other relief as the Court deems just and equitable.

## FOURTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress

44. Plaintiff incorporates by reference the preceding paragraphs.

45. Defendants abused its position of power in order to harm Plaintiff.

46. Defendants' conduct towards Plaintiff — harassing, demeaning, intimidating, and disrespecting Plaintiff through repeated vulgar comments and repeated unwanted sexual contact despite Plaintiff's numerous objections— constitutes extreme and outrageous conduct.

47. Defendants' conduct —including but not limited to public unwanted sexual contact which brought Plaintiff to the point of tears—went beyond all bounds of decency and is atrocious and utterly intolerable in a civilized society.

48. Defendants' extreme and outrageous conduct occurred on a consistent basis over a long period of time.

49. Defendants' extreme and outrageous conduct caused Plaintiff emotional and psychological damage so severe that no reasonable person would be expected to endure it.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

    a. Back pay and lost benefits; front pay until normal retirement
    b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
    c. Punitive damages for the intentional, knowing and/or reckless acts of discrimination committed by Defendants' management;

    d. Such other relief as the Court deems just and equitable.

### FIFTH CLAIM FOR RELIEF
### Denial/Interference with FMLA 29 U.S.C. § 2615

1. The preceding paragraphs are incorporated herein by reference.

2. Plaintiff, who was eligible for FMLA benefits, was prevented by Defendant —an eligible employer— from exercising those benefits when she was suffering from walking pneumonia.

3. By denying and interfering with Plaintiff's right to exercise FMLA benefits —and unlawfully terminating Plaintiff without allowing leave— Defendant has violated 29 U.S.C. § 2615(a)(1).

WHEREFORE, Plaintiff prays for judgment against Defendant for:

    a. Compensatory damages and liquidated damages
    b. Here attorney's fees and the costs and expenses of this action;
    c. Such other relief as the Court deems just and equitable

WHEREFORE, based on the foregoing, Plaintiff prays that this Court grant her the relief sought including, but not limited to, actual damages and punitive damages in excess of Seventy-Five Thousand Dollars ($75,000), with interest accruing from date of filing of suit, back pay and lost benefits, compensatory damages for mental anguish, pain and suffering and other non-pecuniary losses, reasonable attorneys' fees, injunctive relief, and all other relief deemed appropriate by this Court.

Respectfully Submitted,

                                              /s/ David Warta
                                              _____
                                              David A. Warta, OBA #20361
                                              Smolen Smolen & Roytman, PLLC
                                              701 S. Cincinnati Ave.
                                              Tulsa, Oklahoma 74119
                                              (918) 585-2667
                                              *Attorney for Plaintiff*